IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-03050-PAB-STV

CRAIG HOSPITAL, a Colorado non-profit corporation,

    Petitioner,

v.

UNITED HEALTHCARE SERVICES, INC., a foreign corporation,
UNITED HEALTHCARE INSURANCE COMPANY, a foreign corporation, and
JONH DOE(S) UNITED HEALTHCARE ENTITY OR ENTITIES,

    Respondents.

---

# ORDER

---

The matter before the Court is the Motion to Remand [Docket No. 25]. Respondents filed a response. Docket No. 52. Petitioner replied. Docket No. 60.

## I.    BACKGROUND

Petitioner Craig Hospital filed an arbitration action against respondents to recover for rehabilitative services it provided to a patient for the patient's traumatic brain injury. Docket No. 6 at 1–2, ¶ 1. Specifically, Craig Hospital brought claims for breach of contract, breach of the covenant of good faith and fair dealing, and violations of Colo. Rev. Stat. § 10-3-1115 and § 10-3-1116. *Id.* The arbitrator found against Craig Hospital on all of its claims, *id.* at 2, ¶ 2, and denied Craig Hospital's "demand for payment of $282,200." Docket No. 1-3 at 23. On October 9, 2024, Craig Hospital filed a petition in the District Court for Arapahoe County, Colorado, to vacate the arbitration

award pursuant to § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.[1] Docket No. 6 at 1, 2, ¶ 3. On October 31, 2024, respondents removed this action to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. Docket No. 1 at 1. On November 29, 2024, petitioner filed a motion to remand the case to state court, arguing that the amount in controversy does not meet the requirements of § 1332. Docket No. 25 at 3–4. On January 10, 2025, respondents responded, Docket No. 52, and petitioner replied on February 7, 2025. Docket No. 60.

## II.  LEGAL STANDARD

Generally, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). There are two basic statutory grounds for original jurisdiction in federal district courts: federal-question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003). Pursuant to § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "Federal district courts must strictly construe their removal jurisdiction." *Env't. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d 1088, 1092 (D. Colo. 2000).

---

[1] The petition states that it seeks to vacate "the Final Award of Arbitrator pursuant to 9 USC § 10 and 9 U.S.C. § 12." Docket No. 6 at 1. Section 12 addresses procedural rules for a motion to vacate an arbitration award and does not provide an independent cause of action. 9 U.S.C. § 12.

2

"In establishing the amount-in-controversy required for diversity jurisdiction . . . the removing defendant must 'affirmatively establish jurisdiction by proving jurisdictional facts by a preponderance of the evidence that make it possible that more than $75,000' is at issue." *Parnes v. Safeco Ins. Co. of Am.*, No. 15-cv-01947-DME-MEH, 2015 WL 7774282, at *1 (D. Colo. Dec. 3, 2015) (alterations omitted) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008)); *Lopez v. Cantex Health Care Centers II, LLC*, 2023 WL 2206791, at *5 (D.N.M. Feb. 24, 2023), *aff'd*, 2023 WL 7321637 (10th Cir. Nov. 7, 2023) ("Although Defendants were not required to attach evidence to their notices of removal, they were required to prove jurisdictional facts by a preponderance of the evidence after Plaintiffs challenged the evidence in their motions to remand." (emphasis omitted)). When the parties contest jurisdictional facts, "the court has wide discretion to consider documents and evidence other than the complaint." *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1262 n.3 (D.N.M. 2011) (citing *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir. 1995)); *Parnes*, 2015 WL 7774282, at *1 ("Beyond referencing the plaintiff's complaint, defendants can point to interrogatories, affidavits, contractual terms, plaintiff's proposed settlement amounts, plaintiff's own estimations of a claim's value, correspondence between counsel, and 'other evidence.'" (citing *McPhail*, 529 F.3d 955–56)).

III.     **ANALYSIS**

    1. ***Vaden* and *Badgerow***

In 1925, Congress enacted the FAA "to overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009)

3

(internal quotations, alterations, and citations omitted).  "To that end, § 2 provides that arbitration agreements in contracts involving commerce are valid, irrevocable, and enforceable."  *Id.* (citation and quotations omitted).  Section 4 of the FFA allows United States district courts to enforce arbitration agreements by compelling the resisting party into arbitration.  *Id.*; *see also* 9 U.S.C. § 4.  Section 9 allows a party to ask the district court to confirm an arbitration award.  9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award.").  A party may also seek to vacate an arbitration award under § 10.  *See* 9 U.S.C. § 10.  Section 10(a) provides that

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*

In *Vaden*, 556 U.S. at 58, the Supreme Court considered how federal courts determine whether they have jurisdiction over petitions to compel arbitration under § 4.  The Court noted that the FAA is "something of an anomaly" because the federal

legislation "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Id.* at 59 (citation, quotations, and alterations omitted). Therefore, all petitions under the FFA must demonstrate that the federal court has an independent basis to exercise jurisdiction. *Id.*

"Petitions to compel arbitration, § 4 states, may be brought before any United States district court which, save for such agreement, would have jurisdiction under title 28 of the subject matter of a suit arising out of the controversy between the parties." *Id.* at 58 (alterations omitted) (quoting 9 U.S.C. § 4). The Court explained that the "phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Id.* at 62 (citation and quotations omitted). As such, federal courts "may 'look through' the petition and examine the parties' underlying dispute to determine whether federal-question jurisdiction exists over the § 4 petition." *Id.* at 57.

In *Badgerow v. Walters*, 596 U.S. 1, 5 (2022), the Supreme Court considered whether the "same 'look-through' approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10." The Court held that it did not. *Id.* The parties in the case had brought opposing petitions to confirm and vacate the arbitral award resolving Ms. Badgerow's claims under federal and state employment laws. *Id.* The Court stated that the parties' petitions were "contesting not the legality of Badgerow's firing but the enforceability of an arbitral award. That award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims. And quarrels about legal settlements—even settlements of federal claims—typically involve only state law, like disagreements about other contracts." *Id.* at 9 (citation omitted).

5

The Court found that the parties could not rely on the underlying federal employment law claims as a basis for jurisdiction because § 9 and § 10 "contain none of the statutory language on which *Vaden* relied.  Most notably, those provisions do not have Section 4's 'save for' clause."  *Id.* at 11.  Therefore, the Court held that the district court erred in "proceed[ing] downward to Badgerow's employment action," by looking through "the face of the Section 9 and 10 applications to find a basis for jurisdiction."  *Id.* at 9.

### 2.  Matter in Controversy

Craig Hospital argues that, under *Badgerow*, the Court cannot consider the amount Craig Hospital claimed in the arbitration action to determine the amount in controversy for purposes of establishing diversity jurisdiction.  Docket No. 25 at 3–4.  Instead, it claims that the Court may only consider the amount awarded by the arbitrator.  *Id.*  Because the arbitrator found against Craig Hospital on all of its claims, Craig Hospital maintains that the amount in controversy in this action is zero dollars.  *Id.* at 5.  Therefore, Craig Hospital contends that respondents cannot demonstrate that the amount in controversy exceeds $75,000.  *Id.* at 5–7.

Respondents argue that, "in an action seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'"  Docket No. 52 at 7 (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)).  They assert that the "valuation determination is made based on the 'either viewpoint' rule—that is, considering 'the value of a judgment from the viewpoint of the plaintiff or the cost from the viewpoint of the defendant of injunctive and declaratory relief.'"  *Id.* (quoting *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021)).  Respondents contend that, because Craig Hospital is

6

seeking injunctive relief by requesting that the Court vacate the arbitration award and remand for further arbitration proceedings, and because Craig Hospital stands to gain $282,200 if it wins in arbitration, the amount in controversy exceeds $75,000. *Id.*

The Court begins by looking to the text of the statute conferring diversity jurisdiction. Section 1332(a) states that "district courts shall have original jurisdiction of all civil actions *where the matter in controversy* exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a) (emphasis added). Craig Hospital acknowledges that it sought damages exceeding the jurisdictional minimum in the underlying arbitration proceedings, but it argues that the "matter in controversy" before the Court is the enforceability of the arbitration award, which award was zero. Docket No. 25 at 3, 7. Respondents maintain that the matter before the court includes Craig Hospital's underlying claims in the arbitration proceedings because Craig Hospital is requesting a remand to the arbitrator. Docket No. 52 at 7. As such, respondents argue that the Court can consider the possibility that an arbitrator may, on remand, grant Craig Hospital's demand for $282,000 on its underlying claims.[2] *Id.*

---

[2] The Court notes that the petition to vacate the arbitration award does not include an allegation that Craig Hospital made a demand for $282,000 in the arbitration proceedings. *See* Docket No. 6. Instead, both parties rely on the fact that Craig Hospital attaches to its petition a copy of the arbitration award. *See, e.g.,* Docket No. 25 at 3 (citing Docket No. 1-3 at 22-23). The parties' reliance on the arbitration award would appear to violate *Badgerow*'s instruction not "to go beyond the face of the Section 9 and 10 applications to find a basis for jurisdiction." *Badgerow*, 596 U.S. at 9. However, the petition itself includes allegations that the arbitrator made inaccurate finds of fact regarding payments owed to Craig Hospital that exceeded $188,234.24. *See* Docket No. 6 at 14, ¶¶ 51-52. Accordingly, even if the Court were to decline to consider the parties' assertion that the amount in controversy in the arbitration proceedings was $282,000, the allegations in the petition show that the amount in controversy in the underlying dispute exceeded $75,000. The issue, however, is whether the Court can consider that sum as part of the "matter in controversy" in this case.

The Supreme Court's decision in *Badgerow* did not explain how the Court should determine the amount in controversy for petitions to vacate arbitration awards. *See Badgerow*, 596 U.S. at 5. Instead, the issue before the Court was whether it had federal question jurisdiction. *Id.* Nevertheless, the Court finds *Badgerow* instructive in determining what constitutes the "matter in controversy" in this case. In *Badgerow*, the Court rejected the district court's ability "to exercise jurisdiction over an FAA application [merely] when the parties' underlying substantive dispute would have fallen within the court's jurisdiction." *Id.* at 6, 12. Instead, the Court stated that the parties "are now contesting not the legality of Badgerow's firing but the enforceability of an arbitral award. That award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims." *Id.* at 9. The Court explained that the jurisdictional language in § 4 that permits courts to consider the claims in the underlying dispute is "highly unusual" because § 4 "locates jurisdiction not in the action actually before the court, but in another controversy neither [before the court] nor ever meant to be" before the court, namely, the underlying controversy in the arbitration proceedings. *Id.* at 12. However, the matter before the Court in *Badgerow* was not brought under § 4, but rather under § 9 and § 10. *Id.* at 5. The Court rejected the argument that § 9 and § 10 follow the highly unusual rule of § 4 and held that Congress did not authorize district courts to exercise jurisdiction over FFA applications based on the nature of the underlying dispute between the parties. *Id.* at 12. Thus, for purposes of determining the basis for federal jurisdiction, the "matter in controversy" in petitions to vacate an arbitration award under § 10 of the FAA is the enforceability of the award itself, which is a matter unrelated to the parties' underlying claims. *See id.* at 9, 12.

This conclusion is consistent with other Supreme Court precedent that indicates that the consequences of collateral proceedings are not considered part of the controversy before the court. For example, in *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892), the Court stated that, "[i]t is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain." The Court therefore found that the value of the property used as collateral on a loan was not considered part of the matter in controversy in a dispute over whether the loan agreement violated Georgia's usury laws. *Id.* at 130-31. The Court reasoned that, although a favorable outcome could provide a defense in a separate action for eviction of the property, the property was not "involved in the particular case." *Id.* Similarly, in *Healy v. Ratta*, 292 U.S. 263, 268 (1934), the Court explained that, although "[i]t has been said that it is the value of the 'object of the suit' which determines the jurisdictional amount in the federal courts," "this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings" are part of the matter in controversy in a particular case. *Id.* The Court noted that the "statute itself does not speak of objects of the suit. It confers jurisdiction only if 'the matter in controversy exceeds . . . the sum or value of $3,000.'" *Id.* (citation omitted). The Court held that an action to restrain the collection of taxes does not meet the jurisdictional threshold when the taxes allegedly owed do not meet the jurisdictional minimum and the parties instead rely on the potential penalties for not paying the taxes. *Id.* The Court stated that "[w]hether and in what manner the penalty

9

for nonpayment may be enforced in the event the tax is valid are but collateral and incidental to the determination whether payment may be exacted." *Id.*

Applying the Supreme Court's decision in *Badgerow*, as well as other diversity jurisdiction precedents, several courts have recently determined that the jurisdictional amount of the matter in controversy in petitions to confirm arbitration awards is determined by the amount of the arbitration award. In *Dixon v. PayPal Inc.*, 2023 WL 6283286, at *1 (E.D.N.Y. Sept. 26, 2023), the petitioner filed a motion to vacate the arbitration award under § 10 of the FAA. During arbitration, the petitioner made claims for $114,000. *Id.* at *1-2. However, the arbitrator denied petitioner's claims "in their entirety." *Id.* at *1. Petitioner argued that the court had diversity jurisdiction over his FAA case because he had asserted claims for $114,000 during the arbitration proceedings. *Id.* at *2. In rejecting this argument, the court explained that the arbitration "award is the amount that could 'flow[ ] *directly* and with a fair degree of probability' from one party to another as a result of the judgment." *Id.* at *3 (quoting *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972)); *see also Phelps Oil*, 5 F.4th at 1127 ("the amount in controversy cannot be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment" (citing *Kheel*, 457 F.2d at 49)). The court stated that "[p]otential sums from 'collateral' sources do not count." *Dixon*, 2023 WL 6283286, at *3 (citing *Kheel*, 457 F.2d at 49; *Healy*, 292 U.S. at 268). The court held that ordinary principles of jurisdiction "point to the arbitral award as the measure of the amount in controversy when a litigant seeks to vacate such an award – whether or not the litigant seeks to have the case sent back for a new arbitration" – because the "award is the amount that could flow directly and with a fair

10

degree of probability from one party to another as a result of the judgment." *Id.* (citation, quotation, and alterations omitted). The court noted that

> a court vacating the award could 'in its discretion, direct a rehearing by the arbitrators,' 9 U.S.C. § 10(b)—who could, in turn, award new damages after another arbitration proceeding. But the possibility that an arbitrator will provide a new award during a future arbitration is not properly considered in determining the amount in controversy because such an award would flow directly from decision of a separate decisionmaker—the arbitrator—rather than from the court's judgment.

*Id.* (citation, quotation, and alterations omitted). Because the matter in controversy raised by the petition to vacate was the arbitration award, and because the award was for zero dollars, the court found that the value of the matter in controversy did not exceed $75,000. *Id.*

A court in this District reached a similar conclusion in *Clark v. Charles Schwab & Co. Inc.*, No. 22-cv-03015-SKC-SBP, 2024 WL 1281451, at *3 (D. Colo. Mar. 26, 2024). In that case, the petitioner filed a motion to vacate the arbitration award under § 10 of the FAA. *Id.* at *1. The court stated that *Badgerow* instructed courts not to look through to the amount in controversy in the underlying arbitration. *Id.* Instead, the court held that "the amount in controversy is zero dollars" because the "arbitral panel denied Plaintiff's claims in their entirety and awarded no money to any party." *Id.* at *4. The court stated that, although the motion to vacate did "contain a calculation of Plaintiff's alleged damages . . ., considering those damages to determine the amount in controversy would require the Court to look through the Motion to Vacate to the underlying dispute that the parties submitted to arbitration." *Id.* The court declined to consider the amount in controversy in the underlying dispute, and instead held that "the

11

amount in controversy, looking solely to the petition to vacate the arbitral award, is zero." *Id.*

In *Mitchell v. Frattini*, 2022 WL 17157027, at *1 (S.D.N.Y. Nov. 22, 2022), the court found that it lacked jurisdiction over the petition to vacate or modify the arbitration award under § 10 and § 11. The court found that the arbitration panel awarded the respondents $25,450 in attorney's fees and determined that the petitioner was not entitled to any of the $121,240 it claimed in the underlying proceedings. *Id.* The court reasoned that "[t]he arbitration award at issue totaled $25,450, less than the $75,000 demanded by diversity jurisdiction." *Id.* The court refused to consider the fact that "the underlying arbitration involved an amount-in-controversy greater than $75,000" because *Badgerow* foreclosed the court's ability to "look-through" the award to the underlying controversy in the arbitration proceedings. *Id.*

Lastly, in *Shelton v. Fed. Sav. Bank*, 2025 WL 395290, at *2 (D. Ariz. Jan. 22, 2025), the court candidly acknowledged that "[c]oncluding the amount-in-controversy requirement is 'zero' when the arbitration award is in favor of the defendant is a strange result because it would seem to establish federal courts will never have jurisdiction to confirm arbitral awards such as the one entered against Shelton." However, the court stated that "*Badgerow* explicitly recognized that its holding would mean applications to vacate awards from arbitrations of 'federal-law dispute[s]' would often go to 'state, rather than federal, courts.'" *Id.* (quoting *Badgerow*, 596 U.S. at 18). The court therefore found that it lacked jurisdiction over the § 10 petition to vacate the arbitration award since the amount in controversy was zero dollars. *Id.*; *see also Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 561 (9th Cir. 2025) ("facts establishing that the amount in

12

controversy exceeds $75,000 must be present on the face of a Section 9 petition to confirm an arbitration award before a district court can assert diversity jurisdiction over the action. . . . Appellees went to the district court to confirm a zero-dollar award dismissing Balan's libel claims. On its face, a petition to confirm a zero-dollar award cannot support the amount in controversy requirement.").

The holdings of these cases are consistent with federal court decisions before *Badgerow*, which similarly held that arbitral awards for zero dollars do not support diversity jurisdiction in federal court. *See Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 260 (6th Cir. 1994) ("A claim for vacation of an arbitral award in the amount of $50,000 or less is not sufficient for diversity jurisdiction."); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) ("The maximum remedy sought by the Baltins was the vacatur of the arbitration award of $36,284.69. Diversity jurisdiction did not exist because it was a 'legal certainty' that the amount in controversy was less than $50,000, the amount required for federal diversity jurisdiction at the time the Baltins filed suit." (footnote omitted)); *Sirotzky v. New York Stock Exch.*, 2002 WL 1052029, at *3 (N.D. Ill. May 20, 2002), *aff'd*, 347 F.3d 985 (7th Cir. 2003) ("the amount-in-controversy requirement is not satisfied when a plaintiff petitions a federal court to vacate an arbitration award of less than $75,000, at least where the plaintiff refrains from seeking a rehearing to pursue a previously-arbitrated claim in excess of $75,000."); *but see Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005) ("The question presented to us thus boils down to whether the $200 million Theis sought to recover by its complaint is the amount in controversy under 28 U.S.C. § 1332(a), or whether the amount in controversy must be measured by the zero dollar arbitration award Theis

13

sought to vacate. We are satisfied that the amount in controversy is the amount Theis sought to recover by its complaint.").[3]

The Court finds that the "matter in controversy" in this case is the enforceability of the arbitration award. *See Badgerow*, 596 U.S. at 9 ("Recall that the two are now contesting not the legality of Badgerow's firing but the enforceability of an arbitral

---

[3] Courts are not universal in declining to consider the amount at issue in the underlying arbitration action for purposes of establishing the amount in controversy under § 1332 after *Badgerow*. In *Winscher v. Davison*, 2024 WL 5416164, at *4 (W.D. Pa. Dec. 9, 2024), *report and recommendation adopted*, 2025 WL 553236 (W.D. Pa. Feb. 19, 2025), the court determined that the "demand approach" was the appropriate means of determining the amount in controversy. "Under the 'demand approach', the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded." *Id.* at *3. The court noted that other district courts had determined that the demand approach has been abrogated by *Badgerow*. *Id.* (citing *Dixon*, 2023 WL 6283286, at *1; *Clark*, 2024 WL 1281451, at *3-4). However, the court explained that, in *France v. Bernstein*, 43 F.4th 367, 382 (3d Cir. 2022), the Court of Appeals for the Third Circuit assumed jurisdiction, even though the arbitrator had ruled against the petitioner. *Winscher*, 2024 WL 5416164, at *3. The *Winscher* court noted that *France* was decided after *Badgerow* and concluded that the "demand approach" was still viable under Third Circuit precedent. *Id.* at *4. Nevertheless, the court found that it was unnecessary to resolve the amount in controversy issue because the petitioner failed to allege complete diversity of citizenship between the parties. *Id.* at *5 ("In this case, with reference to the attached Amended Complaint and taking the demand approach, it cannot be said to a legal certainty that Winscher's claim is for less than the jurisdictional threshold. Even so, as earlier noted, his failure to allege diversity jurisdiction is fatal."). The Court finds that *Winscher* is distinguishable because it relies on Third Circuit precedent that did not address the issue of whether the "demand approach" was viable after *Badgerow* and because the court's discussion of the amount in controversy was not material to the court's resolution of the case. Two recent cases from the Northern District of Texas have stated that the "amount in controversy in an action to vacate an arbitration award is not the amount of the actual arbitration award but the amount demanded in the underlying arbitration." *Scott v. Syneos Health, LLC*, 2025 WL 1799967, at *2 (N.D. Tex. June 4, 2025), *report and recommendation adopted*, 2025 WL 1797913 (N.D. Tex. June 30, 2025); *Mai v. Art Inst. of Dallas Aii, LLC*, 2023 WL 5986464, at *2 (N.D. Tex. Sept. 14, 2023). Neither court provides more discussion of this assertion. *See Scott*, 2025 WL 1799967, at *2; *Mai*, 2023 WL 5986464, at *2. Instead, both cases rely on a 2016 opinion from the Court of Appeals for the Fifth Circuit, *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 182-83 (5th Cir. 2016). *Scott*, 2025 WL 1799967, at *2; *Mai*, 2023 WL 5986464, at *2. These cases do not consider the effect of *Badgerow* on the Fifth Circuit's holding in *Pershing*.

award."). Thus, the issues raised by the petition to vacate relate only to whether the arbitration award is invalid because, for example, "the award was procured by corruption, fraud, or undue means" or because "there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(1), (2). The "petition to vacate an arbitration award doesn't raise the merits of the underlying claim." *Friedler v. Stifel, Nicolaus, & Co., Inc.*, 108 F.4th 241, 246 (4th Cir. 2024); *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

Moreover, the Court finds that the claims raised in Craig Hospital's arbitration action against respondents are "contingent . . . [and] collateral claims." *Phelps Oil*, 5 F.4th at 1127–28. As explained by the court in *Dixon*, even if the Court were to vacate the arbitration award, any right of Craig Hospital to recover against respondents would "flow directly from decision of a separate decisionmaker—the arbitrator—rather than from the court's judgment." *Dixon*, 2023 WL 6283286, at *3. Therefore, the Court rejects respondents' argument that the value of the matter in controversy in this case is the value of Craig Hospital's claims in the arbitration proceedings. *See* Docket No. 52 at 7. The fact that Craig Hospital's ability to get a second bite at the apple in arbitration is contingent on the Court's resolution of its petition to vacate does not mean that any future arbitration award is part of the matter in controversy in this case. Because "the amount in controversy cannot be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment," *Phelps Oil*, 5 F.4th at 1127–28, and because the Supreme Court has stated that courts may not "look through the

15

Section 9 and 10 applications to the underlying substantive dispute," *Badgerow*, 596 U.S. at 9, the Court will not consider the amount in controversy in the parties' arbitration proceedings. Instead, the Court will look "to the amount of the arbitral award to determine the amount in controversy." *Dixon*, 2023 WL 6283286, at *2. The petition states that, "[f]ollowing an arbitration that took place on May 14, 2024 through May 15, 2024, the arbitrator, Emily Wey, entered an award dated July 18, 2024, finding against Craig on all claims." Docket No. 6 at 2, ¶ 2. Accordingly, the Court finds that the value of the arbitration award is zero dollars.[4] Because the arbitration award does not exceed $75,000, the Court finds that respondents have failed to prove that the Court has diversity jurisdiction in this case. Therefore, the Court will grant Craig Hospital's motion to remand.[5]

---

[4] The petition states only that the arbitrator found against Craig Hospital on all of its claims. Docket No. 6 at 2, ¶ 2. On its face, this does not necessarily mean that the arbitration award was for zero dollars, although the Court makes this inference from the allegation. Nevertheless, it is respondents' burden to demonstrate the amount in controversy "by proving jurisdictional facts by a preponderance of the evidence that make it possible that more than $75,000 is at issue." *Parnes*, 2015 WL 7774282, at *1. The fact that the arbitrator denied all of Craig Hopsital's claims does not support an inference that the amount of the arbitral award exceeds $75,000 and falls short of proving such amount by a preponderance.

[5] The parties dispute whether the Court should consider Craig Hospital's civil cover sheet filed in state court as evidence of the amount in controversy in this case. Docket No. 52 at 4; Docket No. 60 at 3. Because the civil cover sheet states that petitioner is seeking "a monetary judgment over $100,000," Docket No. 1-4 at 2, respondents claim that they have shown by a preponderance of the evidence that the case meets the amount in controversy requirement. Docket No. 52 at 4. The state court civil coversheet is not part of the petition to vacate the arbitration award, and the Court will not consider it. *Badgerow*, 596 U.S. at 9 (courts may not consider materials beyond the face of the petition). In addition, the civil cover sheet does not allege the value of the arbitration award. *See* Docket No. 1-4 at 2. Because the Court has found that the amount in controversy in this case is governed by the amount of the arbitration award, the civil cover sheet is not relevant to determining the Court's jurisdiction in this case.

16

## IV.   CONCLUSION

It is therefore

**ORDERED** that the Motion to Remand [Docket No. 25] is **GRANTED in part and DENIED in part**.[6]  It is further

**ORDERED** that this case is **REMANDED** to the District Court for Arapahoe County, Colorado, where it was originally filed as Case No. 2024CV32188.  It is further

**ORDERED** that this case is closed.

DATED September 9, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[6] In the motion remand, Craig Hospital "requests an order granting it just costs and any actual expenses, including attorney fees, incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c) given that the removal was improper *ab initio*.  Docket No. 25 at 6 (citing *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997)).  Craig Hospital provides no support for its request for attorney's fees beyond this single sentence.  *See id.*  Pursuant to the Local Rules, motion for attorney's fees must "be supported by affidavit."  D.C.COLO.LCivR 54.3(a).  Moreover, the motion "shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."  D.C.COLO.LCivR 54.3(b).  The Court will deny Craig Hospital's request for attorney's fees.  *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").